Flor O'Fray RODRIGUEZ; Juan Torres Rodriguez, on behalf of his son Elias Torres Rodriguez; Juan Rodriguez; Manuel Rodriguez Diaz, on behalf of his son Angel Luis Rodriguez, Carmelo Rodriguez, on behalf of his son Julio Rodriguez Burgado and Manuel Melendez Lopez, Plaintiffs,

v.

Lester W. BENNETT, Lester Bennett and Sons, Inc.; Dimas Melendez, Sr. and Dimas Melendez, Jr., Defendants.

Civ. No. 79–2604.

United States District Court,
D. Puerto Rico.

June 7, 1982.

Julio M. López-Keelan, P. R. Legal Services, Migrant Workers Div., Rio Piedras, P. R., and Hugh F. Brantley, Farmworkers Legal Services of N. Y., Rochester, N. Y., for plaintiffs.

Arturo Trias, José Ubarri, San Juan, P. R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

Plaintiffs brought this action pursuant to The Farm Labor Contractor Registration Act, 7 U.S.C. Sec. 2041 *et seq.*, after being discharged from their employment in defendant Lester W. Bennett and Sons, Inc.'s farm which is dedicated to raising fur-bearing animals, specifically, minks. The issues raised by this defendant's Motion for Summary Judgment are: whether plaintiffs are migrant workers within the meaning of 7 U.S.C. Sec. 2042(g); whether defendant hired the required number of migrant workers to be properly considered a farm labor contractor, and, whether plaintiffs can bring an action under *P.R. Laws Ann.*, Tit. 29, Sec. 521 *et seq.*, without the intervention or appearance of the Secretary of Labor of Puerto Rico. Defendant interprets the Farm Labor Contractors Act to apply to agricultural workers who are hired on a seasonal or other temporary basis only. Section 2042(g) is read by it as requiring that the workers be employed in agriculture *and* that such employment be on a temporary basis in order for plaintiffs to be protected by the Act.

The statute defines migrant worker as an individual "whose primary employment is in agriculture, as defined in sections 203(f) of Title 29, or who performs agriculture labor, as defined in section 3121(g) of Title 26, on a seasonal or other temporary basis." 7 U.S.C. Sec. 2042(g). The statutes that the definition refers to for the meanings of "agriculture," The Fair Labor Standards Act, and of "agricultural labor," The Internal Revenue Code, include activities such as those performed by plaintiffs on defendant's farm. Since these chores—general care of fur-bearing animals—were their main activities, it can reasonably be concluded that their primary employment on defendant's farm was in agriculture. The question then is whether the Act requires that such primary employment in agriculture be on a seasonal or temporary basis.

The regulations make it sufficiently clear that a migrant worker is either one whose primary employment is in agriculture, as that term is defined in the FLSA, or one who performs agricultural work on a temporary or seasonal basis. The wording of the regulation contained in 29 CFR 41.13 indicates that primary employment refers to a situation wholly apart and distinct from that of agricultural activity performed only on a temporary or seasonal basis:

As used in the definition of 'migrant worker,' the term 'primary employment'

is intended to include any person whose chief principal or main occupation is in 'agriculture.' If an individual performs agricultural labor, however, on a seasonal or other temporary basis, he is a 'migrant worker' as defined in the Act, irrespective of his primary employment. 29 CFR 41.-13.

Aside from the fact that general rules of statutory interpretation do not favor defendant's position,[1] the bifurcated approach contained in the administrative definition of migrant worker strongly suggests that the seasonal or temporary requirement does not apply to those whose primary or chief occupation is in agriculture. Such was the position adopted by the Ninth Circuit in *Marshall v. Coastal Growers Ass'n.*, 598 F.2d 521 (9th Cir. 1979). The Court reasoned that the Act's definition was a term of art with no particular reference to migratory tendencies of farmworkers and that the apparent intent of the Act was to cover as migrant workers those agricultural workers who were excluded from the FLSA. *Id.*, at 524. The Court concluded that the definition of "migrant workers" included for purposes of the Act, "*both* those whose primary employment is in agriculture and those who perform agricultural labor on a seasonal or other temporary basis." *Id.*, at 524. See also: *Marshall v. Souza Brothers Packing Co.*, 83 CCH Lab. Cas. para. 33625 (CD Cal.1977). Other cases, although not dealing directly with the interpretation of the statutory definition of migrant worker, have apparently assumed that the agricultural employment must be on a temporary basis. See: *Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857, 859 (MD Fla.1976). On the other hand, in *Marshall v. Buntings' Nurseries, Inc.*, 459 F.Supp. 92 (D Md.1978), the Court confronted the issue but did not decide whether to adopt the Ninth Circuit's holding. Instead it elaborated the administrative definition of "temporary" and decided that the partic-

ular workers involved in that case were hired on a temporary basis.

In the instant case, we could conclude that the documents presented raise sufficient controversy on the allegedly permanent nature of plaintiffs' employment so as to defeat defendant's motion for summary judgment. However, we would rather decide this aspect of the motion by referring to *Marshall v. Coastal Growers Ass'n., supra.* We view the position adopted there by the Ninth Circuit as a valid interpretation of the statute in light of the weight to be given the administrative regulations issued by the Secretary of Labor in determining the proper construction of the Act, *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972) and given the remedial purposes of the same. *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). A different approach thwarts the purpose of the Act for farm labor contractors could evade its coverage by devising contractual schemes to employ laborers whose primary work is in agriculture without a direct reference to the seasonal or temporary nature of the agricultural work performed. Injecting requirements based on the criteria of "temporary" contained in the regulations into a primary employment situation would create a dangerous element of uncertainty that could be abused as a dilatory tactic to drain the scarce legal resources of migrant workers. In fact, if the statute is read to require that the primary agricultural employment be on a temporary or seasonal basis we would place under the farm labor contractor's control the initial determination of whether the primary agricultural work was "contemplated" to continue indefinitely. The farm workers would then have the additional burden of establishing at an early stage of the proceeding that such work was in fact 'temporary' as defined in 29 CFR 41.17.[2] Adding burdens and techni-

---

1. The use of the disjunctive "or" in the statute indicates alternatives that require separate treatment. Generally, qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding them. *Azure v. Morton*, 514 F.2d 897, 890 (9th Cir. 1975).

2. "(b) a worker is employed on 'other temporary basis' where he is employed for a limited

cal exceptions of coverage to the ones already specifically contained in the Act work to the detriment of the persons who were intended to be protected by this remedial legislation. See: 7 U.S.C. Sec. 2041.

■ As to the matter concerning the numerical requirement, we believe that there is considerable dispute on whether defendant actually hired less than ten workers, irrespective of the conflict arising from the fact that the regulations still contain such requirement while the 1974 amendment to the statute abolished it.[3] That part of defendant's motion for summary judgment based on the numerical requirement is, therefore DENIED since there is substantial controversy on the veracity of the allegation that less than ten workers were hired by defendant. Rule 56 Federal Rules of Civil Procedure; *Gual Morales v. Hernández Vega*, 579 F.2d 677 (1st Cir. 1978) and cases cited therein.

■ However, we believe that the question of whether *P.R.Laws Ann.*, Tit. 29, Secs. 521–534, permits migrant workers to institute an action for its enforcement without the intervention of the Secretary of Labor of Puerto Rico must be answered in the negative for the interpretation that plaintiffs urge us to adopt requires the creation of a cause of action from nothing more than the silence of the statute. Recent Supreme Court decisions warn that courts must proceed with caution when inferring a right of action from a statute. *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Universities Research Ass'n. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct.

2080, 45 L.Ed.2d 26 (1975). Although these cases deal with federal statutes we find their criteria helpful to the present inquiry. The central task in such a situation is to determine whether the legislature intended to create a private remedy from the statute involved. A review of the legislative record of Law 87 of June 22, 1962 and of its 1977 Amendment does not support plaintiffs' contention. Although civil liability was added by the 1977 Amendment, the records and the brief discussion always refer to *the Secretary's* power and the need to expand *the Secretary's* power of enforcement. See: Labor Commission's Report and Statement of Motives, Senate Bill No. 370 "Diario de Sesiones," p. 1241, *et seq.* The fact that most labor laws are also of a remedial nature could lead our interpretation of the statute in another direction.[4] Nevertheless, the legislative debate when the original law was enacted in 1962, reveals that other considerations, besides the protection of migrant workers' rights, were considered by the Puerto Rican Legislature which need to be taken into account and balanced. Of particular importance among these was the creation of job opportunities outside Puerto Rico as an alternative to the unemployed. *Green Giant Co. v. Tribunal Superior*, 104 DPR 489, 497 (1975).

Section 532 which invests the Secretary of Labor with the power of enforcing these provisions was not amended nor was any reference made in the legislative debate and commissions permitting migrant workers to directly institute an action to enforce the statute. "Diario de Sesiones 1977" pp. 1245–1247, 1291, pp. 4, 5, 9, 10 (extraordinary session). This section which expressly empowers the Secretary of Labor and no one else to sue is another reason which militates against inferring an additional

---

time only or his performance is contemplated for a particular piece of work, usually of short duration. Generally, employment which is contemplated to continue indefinitely, is not temporary." 29 CFR 41.17.

**3.** 29 CFR 41.8–41.10 and 7 U.S.C. 2042(b). This holding is limited only to the numerical requirement and not to the other requirements of the Act regarding farm labor contractors.

**4.** Contrary to this statute, other provisions of Puerto Rican labor laws contain specific reference to the worker's right to institute an action enforcing the rights conferred by the particular chapter of the law. See: *P.R.Laws Ann.*, Tit. 29, Secs. 149, 246b and 282.

remedy to the one specifically provided for by the statute. See: *National Railroad Passenger Corp. v. National Ass'n. of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). To infer the right of migrant workers to sue .from the silence of the statute (see: *Falzarano v. United States*, 607 F.2d 506, 510 (1st Cir. 1979)) constitutes an unwarranted intrusion by a court of limited jurisdiction that could seriously affect the administrative policies behind the Puerto Rico migrant workers' program. For instance, the Secretary of Labor might be involved in negotiations to provide employment to a great number of migrant workers and a complaint by a few, without the intervention of the Secretary, could well hinder the furtherance of these benefits for the majority. See: *Romero Barceló v. Brown*, 643 F.2d 835, 850 n. 23 (1st Cir. 1981) rev'd. on other grounds; *Weinberger v. Romero Barceló*, 1982, —— U.S. ——, 102 S.Ct. 1798, 72 L.Ed.2d 91. Also militating against plaintiffs' position is the possibility of flooding the federal forum with diversity claims based on this legislation if this Court were to create, by judicial fiat, an additional remedy to the one expressly provided for by the Legislature of Puerto Rico to enforce the Migrant Workers' Act. See: *27 Puerto Rican Migrant F.W. v. Shade Tobacco G.A.A.I.*, 352 F.Supp. 986, 992 (D.Conn.1973) aff'd. 486 F.2d 1052 (2nd Cir. 1973).

In any event, plaintiffs are not deprived of a forum to air the grievances peculiar to migrant workers for they can turn to the protection of 7 U.S.C. Sec. 2041 as they have here done. In addition, they can seek the protection and enforcement of other general rights and remedies [5] that the laws of Puerto Rico or of New York, depending on which jurisdiction has the dominant contacts, may provide. They can also request that the Secretary of Labor of Puerto Rico initiate proceedings requesting enforcement of 29 *P.R.Laws Ann.*, Sec. 521–534, seek authorization from him to do so, or, if necessary, institute a mandamus proceeding as provided for in *P.R.Laws Ann.*, Tit. 32 Sec. 3421 *et seq.*

**5.** We note that *P.R.Laws Ann.*, Tit. 29 Sec. 526 *et seq.* does not substitute nor extinguish any

For these reasons, we dismiss that part of plaintiffs' complaint requesting enforcement and damages pursuant to *P.R.Laws Ann.*, Tit. 29, Sec. 526–534. The Motion for Partial Summary Judgment filed by codefendant Lester W. Bennett and Sons, Inc. is DENIED in all other respects.

SO ORDERED.

other right or remedy provided by the general laws of Puerto Rico.