Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

Felix MARRERO, Appellant.

No. 82–1314.

United States Court of Appeals, Third Circuit.

Submitted Under Rule 12(6) Nov. 15, 1982.

Decided Dec. 27, 1982.

---

792

T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Washington, D.C., Marshall H. Harris, Regional Sol., Philadelphia, Pa., Paul E. Myerson, Barbara E. Kahl, U.S. Dept. of Labor, Washington, D.C., for appellee.

Joseph E. DeSantis, Terry D. Weiler, DeSantis, Huckabee, Weiler & Schmehl, Reading, Pa., for appellant.

Before ALDISERT, SLOVITER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this action brought by the Secretary of Labor, we must determine whether an independent contractor whose sole business is the removal of spent compost from mushroom houses is a "farm labor contractor" within the meaning of the Farm Labor Contractor Registration Act of 1963 as amended (FLCRA), 7 U.S.C. § 2041 *et seq.* The district court held that defendant Marrero was a "farm labor contractor," and granted summary judgment for the Secretary. *Marshall v. Marrero,* 536 F.Supp. 517 (E.D. Pa.1982). We affirm.

### I.

The Secretary's complaint sought injunctive relief, alleging that defendant Marrero had failed to comply with the registration, disclosure, posting and recordkeeping requirements of the FLCRA, 7 U.S.C. §§ 2043(a), 2045(b), (c), (e). Marrero does not deny that he has failed to comply with these provisions, but contends that he is not required to do so since he is not a "farm labor contractor" within the meaning of the FLCRA.

The parties submitted the case to the district court on the basis of a stipulation of facts. As recited in the stipulation, defendant Marrero, doing business as Green Grass Conveyor Service in partnership with another individual, is engaged "in the performing of certain services for mushroom growers in Berks County, Pennsylvania."

Specifically, Marrero operates a so-called "take-out" operation, removing used compost from mushroom house beds after the mushroom harvest has been completed.[1] The "take-out" operation is performed by a crew of approximately six workers, using electrically operated portable conveyor belts to transport the spent compost from the mushroom houses into waiting trucks. The crew shovels the compost from the mushroom house beds onto the conveyor belts, operates the conveyor belts, and drives the trucks to disposal sites outside the mushroom farm.

Neither Marrero nor the crews he employs to perform the "take-out" operation are employees of the mushroom growers. The crews are the separate employees of Marrero; Marrero is an independent contractor who provides the "take-out" service to the mushroom growers on a contract basis, receiving a fixed sum out of which he pays his employees. Marrero "has no employees other than those whose services are required in the 'take-out' business," all of whom "are domiciled and reside in the area of employment and do not move from place to place seeking employment." The employees provide their own transportation to and from work. The "take-out" operation occurs only once per mushroom crop and the average grower has two, or possibly three, crops per year. Nevertheless, "the services rendered by [Marrero] are performed throughout the entire year (12 months of the year) and the employees, if they desire, have steady full employment." Finally, the parties have stipulated that Marrero has never obtained a certificate of registration under the FLCRA.

Based on the stipulated facts, the district court concluded that Marrero was a "farm labor contractor" within the meaning of the FLCRA. Marrero appeals.

## II.

The Farm Labor Contractor Registration Act was enacted in 1964 as Congress' response to the problem of "certain irresponsible contractors for the services of the migrant agricultural laborers who exploit producers of agricultural products, migrant agricultural laborers, and the public generally." 7 U.S.C. § 2041(a). It was considerably strengthened by amendments in 1974 which extended its coverage and enforcement. In its present form the FLCRA requires that every "farm labor contractor" obtain a certificate of registration from the Secretary of Labor; file statements with the Secretary concerning the transportation and housing of migrant workers; disclose to the migrant workers various information concerning the conditions of their employment; and maintain payroll records and furnish the migrant workers with statements of all sums paid on account of their labor and all sums withheld. 7 U.S.C. §§ 2043–2045. The Act imposes criminal and civil penalties for violation of its provisions, and provides for both private damage actions and suits for injunctive relief brought by the Secretary. 7 U.S.C. §§ 2048, 2050(a), (c).

The FLCRA defines a "farm labor contractor" as

> any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his own family) for agricultural employment.

7 U.S.C. § 2042(b). There is no dispute in this case that Marrero "recruits, solicits, hires, furnishes, or transports" individuals "for a fee" as part of his "take-out" operation. He contends, however, that he is not a "farm labor contractor" since his employees are neither "migrant workers" nor engaged in "agricultural employment." Both "migrant worker" and "agricultural employment" are defined in the FLCRA by reference to other statutes.

---

1. Mushroom compost, which is composed primarily of animal manure, hay, cocoa shells and crushed corn cobs, is the medium in which mushrooms are commercially grown. The compost is placed in beds inside the mushroom houses where it is pasteurized and injected with mushroom spawn. At the conclusion of the mushroom harvest the used compost must be removed from the beds and replaced with new compost. *See generally Donovan v. Frezzo Brothers, Inc.,* 678 F.2d 1166, 1168 (3d Cir. 1982).

### A.

#### Migrant Worker

■ The term "migrant worker" is defined by the FLCRA as

an individual whose primary employment is in agriculture, as defined in section 203(f) of title 29 [Fair Labor Standards Act], *or* who performs agricultural labor, as defined in section 3121(g) of title 26 [Internal Revenue Code], on a seasonal or other temporary basis.

7 U.S.C. § 2042(g) (emphasis added). It is clear from the statutory language, legislative history,[2] and judicial interpretation that the term "migrant worker" for purposes of this statute is not limited to a "migratory worker" as one might ordinarily expect. Because the definition is in the disjunctive, it covers not only the seasonal or temporary workers traditionally viewed as migrants but also those "whose primary employment is in agriculture." *Marshall v. Coastal Growers Association,* 598 F.2d 521, 524 (9th Cir.1979); *Rodriguez v. Bennett,* 540 F.Supp. 648, 649–50 (D.P.R.1982); Department of Labor, Wage-Hour Opinion Letter No. 1555 (WH–501), [1978–1981 Wages-Hours Transfer Binder] Lab.L.Rep. (CCH) ¶ 31,341, at 43,437 (Dec. 4, 1979); *see* 29 C.F.R. § 41.13. As the court in *Coastal Growers Association* stated, "This definition is obviously a term of art, having no reference to workers with migratory tendencies." 598 F.2d at 524. Therefore, as the district court recognized, its finding that "the persons employed by the defendant . . . are not to be considered labor on a seasonal or temporary basis", 536 F.Supp. at 520, does not signify that defendant's employees are not "migrant workers". They can also be considered "migrant workers" if their primary employment is in "agriculture", as defined in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(f).

The district court found, based on the stipulated facts, that the "primary employment" of Marrero's employees was in the work they performed for him. Hence we focus on whether that work, removal of mushroom compost, is in "agriculture" within the meaning of the Fair Labor Standards Act. The FLSA provides in pertinent part:

"Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, and production, cultivation, growing and harvesting of any agricultural or horticultural commodities . . . and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations . . .

29 U.S.C. § 203(f).

As we stated recently in *Donovan v. Frezzo Brothers, Inc.,* 678 F.2d 1166, 1169 (3d Cir.1982), this definition of agriculture "is divided into two parts: 'primary' agriculture, which includes all activities which are actually farming, and 'secondary' agriculture, which includes activities incident to or in conjunction with the primary farming operation of a particular farmer." The issue before us in *Frezzo* was whether the production of mushroom compost was "agriculture" within the meaning of the agricultural exemption of the FLSA. In that case we focused only on "primary" agriculture and expressly declined to address whether the preparation of mushroom compost could constitute "secondary" agriculture. 678 F.2d at 1169 n. 3. We concluded that the preparation of mushroom compost was not "cultivation and tillage of the soil" because compost is not soil; that it was not the "production, cultivation, growing [or] harvesting of any agricultural commodit[y]" because compost, as distinguished from mushrooms themselves, is not an agricultur-

2. *See* S.Rep. 1295, 93d Cong., 2d Sess. 2, *reprinted in* 1974 U.S.Code Cong. & Ad.News 6441, 6442; cf. Note, *A Defense of the Farm Labor Contractor Registration Act,* 59 Tex.L. Rev. 531, 556–58 (1981) (describing Congressional rejection in 1980 of Boren Amendments, which would have redefined "migrant worker" to mean an individual "engaged on a farm or ranch, on a seasonal or other temporary basis, in agricultural employment . . . who cannot regularly return to his or her domicile each day after working hours, or who is transported from and to his or her domicile each workday by the [farm labor contractor]," S. 2675, 96th Cong., 2d Sess., 126 Cong.Rec. S9791–92 (daily ed. July 24, 1980) (statement of Sen. Boren)).

al commodity but is more appropriately characterized as a manufactured product; and that it was not any other form of "farming in all its branches."

In this case we focus instead on the portion of the statutory definition not reached by the *Frezzo* court, and hold that the work performed by Marrero's employees constitutes "secondary" agriculture within 29 U.S.C. § 203(f). "Secondary" agriculture under the FLSA includes "any practices performed by a farmer *or* on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f) (emphasis added). Marrero's "take-out" operation, although not performed "by a farmer", is conducted "on a farm" since the shoveling of the spent compost from the mushroom beds onto the conveyor belts takes place in the mushroom houses, and Marrero has not suggested that mushroom houses should not be treated as farms. *See Donovan v. Frezzo Brothers, Inc.,* 678 F.2d at 1169 ("mushroom growing is a type of farming"). The removal of spent compost is "incident to or in conjunction with" mushroom farming because the removal of spent compost is an integral step in the mushroom growing process; the mushroom beds cannot be made ready for the next crop until the removal is complete. *See Marshall v. Klee,* No. 80–66 (E.D.Pa. Sept. 23, 1980) (because filling in of mushroom beds with compost is agricultural employment within the meaning of 29 U.S.C. § 203(f), employer is farm labor contractor.)

In *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 767, 69 S.Ct. 1274, 1280, 93 L.Ed. 1672 (1949) (footnotes omitted), the Supreme Court discussed the Congressional purpose behind the definition of "secondary" agriculture contained in the FLSA:

> As originally introduced, the ["incident to"] exemption covered such practices only if performed by a farmer. On the floor of the Senate it was objected that this would exclude the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job. To take care of that situation the words "or on a farm" were added to the definition. Thus, the wheat threshing companies, even though they were separate enterprises, were included in the exemption because their work was incidental to farming and was done on the farm.

This explanation for the inclusion of "secondary" agriculture in the FLSA's definition of "agriculture" applies as well to Marrero's operation.

Marrero suggests that inclusion of his "take-out" operation within the statutory definition of agriculture would open "a Pandora's Box and brin[g] within the [Farm Labor Contractor Registration] Act anyone who collaterally touches the agricultural industry of the United States." Brief for Appellant at 11. He raises the spectre that the employers of plumbers, exterminators and similar maintenance workers who service the mushroom houses occasionally during the year would be compelled to register as farm labor contractors. This far-fetched prospect is not the case before us.[3]

---

**3.** Curiously, the FLCRA directs that the FLSA definition of "agriculture" be used for those employees whose primary employment is in agriculture, but that the Internal Revenue Code definition of "agricultural labor" be used for seasonal or temporary workers. The occasional maintenance workers to whom Marrero refers differ from his employees since they would not have their "primary employment" in their mushroom-related work, and would therefore not be "migrant workers" under the first prong of the statutory definition. The second prong of the definition, not before us in this case, was the subject of the decision in *Kaolin Mushroom*

*Farms, Inc. v. United States,* 1979–2 CCH Tax Cas. ¶ 9652 (E.D.Pa.1979) (Becker, J.), where the court held production of compost fell within the agricultural exemption contained in § 3121(g) of the Internal Revenue Code. In a post-opinion order, the court expressly distinguished between the Fair Labor Standards Act and the Internal Revenue Code definitions. *Kaolin Mushroom Farms, Inc. v. United States,* No. 77–4379 (E.D.Pa. Sept. 27, 1979). For a decision limiting the definition of "agricultural labor" under the Internal Revenue Code, *see Farming, Inc. v. Manning,* 219 F.2d 779 (3d Cir.1955).

We conclude that Marrero's employees who are engaged in the removal of spent compost from mushroom houses have their primary employment in "agriculture" within the meaning of the FLSA, and are therefore "migrant workers" within the meaning of the FLCRA.

### B.

### Agricultural Employment

■ The second element of the statutory definition of "farm labor contractor" pertinent here requires that the migrant workers be recruited, solicited, hired, furnished, or transported for a fee for "agricultural employment." 7 U.S.C. § 2042(b). The FLCRA defines "agricultural employment" as

> employment in any service or activity included within the provisions of section 203(f) of title 29, or section 3121(g) of title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

7 U.S.C. § 2042(d). We can stop at the first clause of this definition because we have already concluded that the work performed by Marrero's employees falls within the definition of "agriculture" contained in 29 U.S.C. § 203(f). It is therefore "agricultural employment" under 7 U.S.C. § 2042(d).

We recognize that Marrero may not be the prototypical farm labor contractor that Congress had in mind when it enacted the FLCRA. Nevertheless, Congress chose to address the problem it envisioned in broad remedial terms, and has since rejected attempts to narrow the scope of the Act. *See* Note, *A Defense of the Farm Labor Con-*

*tractor Registration Act,* 59 Tex.L.Rev. 531 (1981) (discussing Congressional rejection of 1980 amendments proposed by Senator Boren).[4] Until and unless it decides to do so, we must construe the FLCRA's coverage broadly because it is remedial legislation. *See Donovan v. Heringer Ranches, Inc.,* 650 F.2d 1152, 1154 (9th Cir.1981); *Soliz v. Plunkett,* 615 F.2d 272, 275–76 (5th Cir. 1980); *Marshall v. Coastal Growers Association,* 598 F.2d 521, 525 (9th Cir.1979). Examination of the statutory language that Congress chose to use in defining the relevant provisions of the FLCRA leads us to conclude that the statute encompasses defendant's operation.

### III.

Although we are obliged to follow the statutory language, we add a comment on the underlying jurisprudence. We are not unaware that our decision that removal of mushroom compost constitutes "agriculture" may seem anomalous in light of our recent decision in *Donovan v. Frezzo Brothers, Inc., supra,* that the production of mushroom compost is not "agriculture". The explanation that each decision was mandated by the precise statutory definition at issue may appear mechanical, particularly to those in the industry. As Justice Frankfurter stated in his concurrence in *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. at 770, 69 S.Ct. at 1282:

> Both in the employments which the Fair Labor Standards Act covers and in the exemptions it makes, the Congress has cast upon the courts the duty of making distinctions that often are bound to be so nice as to appear arbitrary in relation to each other. A specific situation, like that presented in this case, presents a problem for construction which

4. On December 20, 1982, Congress enacted the "Migrant and Seasonal Agricultural Worker Protection Act," which, as of this writing, has not been signed by the President. The act repeals the Farm Labor Contractor Registration Act and replaces it with a similar but extensively altered statute regulating the activities of farm labor contractors and the welfare of migrant and seasonal agricultural workers. The new statute contains, *inter alia,* new and materially different definitions of "farm labor contractor", "migrant agricultural worker", "seasonal agricultural worker", and other relevant terms. The statute is not to take effect until 90 days from date of its enactment. We decide this case under the law currently in effect and express no view as to the effect of the new statute on the matters at issue. [The new statute, P.L. 97–470, was signed on January 14, 1983].

may with nearly equal reason be resolved one way rather than another.

However, consideration of the statutory objectives supplies the rationale which supports each of our decisions on broader grounds.

The Fair Labor Standards Act was designed not only to place a floor under wages but also a ceiling over hours of employment. As we noted recently, "The limitation in hours also served the purpose during a time of extraordinary unemployment and depressed wages of spreading the work and providing extra compensation for overtime." *Marshall v. Western Union Telegraph Co.,* 621 F.2d 1246, 1250 (3d Cir.1980). It is manifest that the goal of regular working hours and a regular work week is generally inapplicable to agriculture, certainly to "primary" agriculture which does not lend itself easily to a 40 hour work week. Undoubtedly this consideration was one of the motivating factors for the exemption of agriculture from the provisions of the Fair Labor Standards Act. No such reasoning would support exempting the employees in *Frezzo* from the overtime provisions of the FLSA. They were employed in the production of mushroom compost, a physically distinct operation from the growing of mushrooms. They drove trucks, operated heavy machinery for shoveling, mixing, watering and aerating the compost, and ultimately delivered the compost to mushroom growers. 678 F.2d at 1172. Their work was thus not significantly different from that of numerous other employees covered by the FLSA.

The Fair Labor Contractor Registration Act, on the other hand, was designed to regulate the operation of persons and businesses who traffic in farm labor. The Act "is intended to regulate independent 'middlemen' who are in a position to exploit both operators and workers." *Donovan v.*

*Heringer Ranches, Inc.,* 650 F.2d at 1153. That statutory objective is broad enough to cover the operation of the "middleman" who contracts to supply employees who enter onto mushroom farms and remove spent compost. Thus, when the distinct legislative goals of the FLSA and the FLCRA are examined, it is apparent that there is no inconsistency in result between the *Frezzo* decision and that here.

The extent to which various federal statutes should cover agriculture and the scope of "agriculture" for those purposes requires legislative balancing of numerous factors and considerations. The current statute reflects Congress' view as to the coverage needed under the FLCRA as of the time it was last considered. Of course we intimate no opinion as to the wisdom of retaining the statute in its present form. That, we reiterate, is a Congressional decision.

## IV.

For the reasons set forth herein, we will affirm the order of the district court requiring that defendant comply with the provisions of the Farm Labor Contractor Registration Act.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent because I believe that the service performed by appellant Marrero is not an activity incident to farming within the meaning of the Farm Labor Contractor Registration Act (the Act).

At the outset, I must note that under this court's holding in *Donovan v. Frezzo Brothers, Inc.,* 678 F.2d 1166 (1982), compost used in mushroom cultivation is not an agricultural or horticultural product within the meaning of the Act. We described the composting process as "more akin to manufacturing than to agriculture." *Id.* at 1171.[1] For this reason, the mere handling

---

1. As the majority recognize, we concluded in *Frezzo* that
    the preparation of mushroom compost was not "cultivation and tillage of the soil" because compost is not soil; that it was not the "production, cultivation, growing [or] harvesting of any agricultural commodit[y]" be-
    cause compost, as distinguished from mushrooms themselves, is not an agricultural commodity but is more appropriately characterized as a manufactured product; and that it was not any other form of "farming in all its branches."
    Maj. op. at 794-95.

of compost—a nonagricultural product—is not an activity incident to agriculture. The question then becomes one of whether the activities engaged in by Marrero's employees are so integral to the mushroom growing process, "a type of farming," that we must deem those activities to be "incident to or in conjunction with such farming operations" under the Act. See 29 U.S.C. § 203(f).

A review of the stipulated facts in this case reveals that Marrero is an independent contractor engaged on an annual basis in the business of removing spent or dead compost from mushroom beds. Each mushroom grower, to whom he offers his services on a contract and fee basis, engages his services only two or three times a year after the mushroom harvest has been concluded. Under these facts, the majority conclude that the service performed by Marrero's employees is an activity incident to agriculture sufficient to bring them within the terms of the Act because the removal of spent compost is a prerequisite to the filling in of new compost, and the production of more mushrooms. I cannot agree.

The process of deciding whether a given activity is one "incident to agriculture" necessitates judicial line drawing. The cultivation of any agricultural product will inevitably involve a wide variety of activities more or less closely related to farming. The status of certain core farming activities, such as the sowing of seeds, or the injection of mushroom spores into compost, seems clear. Yet as one moves away from these core farming activities and approaches the periphery of agricultural pursuits, the status of various activities becomes murky. Is the insect control specialist who flies over a field in a crop duster one or more times a year engaged in an activity incident to agriculture? What of the contractors who build the wooden trays in which mushrooms are grown? Are the building contractors who erect the mushroom houses, or "doubles" as they are commonly known, and the banker who finances the mushroom grower either seasonally or otherwise, and presumably inspects the premises and crop from time to time, also engaged in activities incident to agriculture? If so, are the employment practices of the contractor and banker subject to regulation under the Farm Labor Contractor Registration Act? I think not.

In the instant case, I believe that the activity performed by Marrero's employees is not sufficiently integral to the growing process to be deemed an activity incident to agriculture. Removal of spent compost is not a step in the mushroom growing process. Rather, it is, in essence, a biannual or triannual clean-up operation, too remotely related to the mushroom growing process to be considered an integral part of it.

It is important that courts distinguish between activities which are truly incident to farming, and those which are too remote from the cultivation process to be so considered. Failure to draw this distinction can only result in application of the Act in situations where Congress never contemplated its application. Congress enacted the Farm Labor Contractor Registration Act to protect migrant workers and farmers from unscrupulous middlemen who sought to exploit both groups. S.Rep. No. 202, 88th Cong., 1st Sess. (1963), reprinted in 1964 U.S.Code Cong. & Ad.News 3690. See also Donovan v. Heringer Ranches, 650 F.2d 1152 (9th Cir.1981); Marshall v. Green Goddess Avocado Corp., 615 F.2d 851 (9th Cir.1980). It did not enact the Farm Labor Contractor Registration Act to regulate the labor practices of every independent contractor who happens to perform services for any person engaged in agriculture.

In the instant case, the majority have chosen to apply the strictures of the Farm Labor Contractor Registration Act to an independent contractor who is not in the business of supplying laborers for farms. He does not traffic in labor. Marrero's employees work directly for him and go onto the property of each mushroom grower only two or three times a year to perform a discrete task only peripherally related to the mushroom growing process.

I therefore dissent from the majority's opinion which seems an unwarranted and potentially limitless expansion of the reach of the Farm Labor Contractor Registration Act. I would reverse the judgment of the district court.